| | |
|---|---|
| In re | |
| **CHRISTIAN MARK MCCOY,** | Case No. **2:25-bk-20080-BPH** |
| Debtor. | |
| **PETRA, INC**, | |
| Plaintiff. | |
| v. | Adv. No. **2:25-ap-02008-BPH** |
| **CHRISTIAN MARK MCCOY**, | |
| Defendant. | |

**MEMORANDUM OF DECISION**

## I.    Introduction

This case illustrates the problems a party may encounter when an arbitration is completed in one state, and the prevailing party seeks to have the arbitration award confirmed in another state. In this adversary proceeding, Plaintiff Petra, Inc. ("Petra") seeks a determination that its claim against Defendant Christian McCoy ("McCoy") based on an arbitration award is nondischargeable under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6).[1] Before this Court are competing Motions for Summary Judgment filed at ECF Nos. 26 and 30.[2]

McCoy's Motion requests a determination that the state court judgment confirming the arbitration award is void because the Montana state court did not have personal jurisdiction over McCoy and it was obtained by fraud or misrepresentation. Further, McCoy argues that the arbitration award alone, without a judgment confirming it, is not entitled to preclusive effect.

---

[1] ECF No. 1. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] McCoy only moves for partial summary judgment (ECF No. 26) ("McCoy's Motion"), but Petra seeks complete resolution of this adversary proceeding (ECF No. 30) ("Petra's Motion"). Objections and replies have been filed to the motions at ECF Nos. 30; 33; 35; and 36.

1

Petra asks this Court to find the judgment is valid and preclusive, and—consequently—that its claim is nondischargeable. Alternatively, it requests that the arbitration award be given preclusive effect, even if the judgment is void.

## II.    Jurisdiction

"Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . ." 28 U.S.C. § 157(b)(1). Core proceedings include, "determinations as to the dischargeability of particular debts[.]" 28 U.S.C. § 157(b)(2)(I).

## III.    Undisputed Facts

### A.  Arbitration and Arbitration Award

Petra is an Idaho corporation.[3] McCoy is a Montana resident and was the sole owner and managing member of McCoy Excavation, LLC ("Excavation").[4]

Petra entered into a construction contract and agreed to act as general contractor for a 216-unit apartment complex in Bozeman, MT.[5] McCoy Excavation, LLC ("Excavation") entered a subcontractor agreement ("Subcontract") with Petra.[6] The Subcontract contained an arbitration and forum selection clause. It provided in part:

> All other claims, disputes, and other matters in question between Contractor and Subcontractor arising out of, or relating to, the Main Contract or this Subcontract, the breach thereof, or Work thereunder . . . shall be decided by arbitration at Contractor's sole and exclusive option, otherwise all disputes shall be decided by litigation . . . . The arbitration proceedings will be administered by AAA in Boise, Idaho, with arbitrators appointed from the Construction Industry Panel under the Construction Industry Rules. Any litigation proceedings shall be in Ada County Court, Idaho. Contractor and Subcontractor agree to be bound by any findings and award of such arbitration.[7]

---

[3] ECF Nos. 1, 2; 17, 1.

[4] ECF Nos. 1, 2–3; 17, 2. McCoy states in his Amended Answer that Excavation has been "dissolved and inactive since 2023." ECF No. 17, 2.

[5] ECF Nos. 1, 3; 17, 2.

[6] ECF Nos. 29, 2; 32, 2.

[7] ECF No. 29-2, 21. Capitalized terms in this paragraph have the following definitions under the Subcontract:

Subcontract: This Agreement

2

Pursuant to the Subcontract, Excavation and Petra agreed disputes would be arbitrated in Boise Idaho, and any litigation would be in Ada County Court, Idaho. It also contained a choice-of-law provision that states, "[t]his Subcontract shall be considered to have been made in and shall be interpreted under the laws of the state of the Project."[8]

Following entry of the Subcontract, Petra and Excavation had a dispute. Petra commenced an arbitration proceeding against Excavation and McCoy on February 2, 2022, in Boise, Idaho.[9] Excavation notified its insurer of the claims asserted in the arbitration demand. Excavation's insurer retained counsel for its insured, subject to a reservation of rights.[10] The insurer filed a complaint and requested a declaration in the United States District Court for the District of Montana ("District Court") that it owed no duty to defend or indemnify Excavation and McCoy under its policy.[11] This complaint was filed in July 2022.[12]

In November 2022, the District Court entered judgment in favor of the insurer, finding that Petra's claims were not covered claims under its policy.[13] Counsel retained by the insurer

---

Contractor: Petra Incorporated, A Corporation of Idaho

Subcontractor: McCoy Excavation, LLC

Work: The Subcontractor shall furnish and perform all labor, materials, tools, supplies, equipment, services, facilities, and supervision necessary for the complete and proper performance of the following portions of work See Exhibit A (Scope of Work)

Main Contract: [T]he contract agreement dated 05/13/21, between Owner and Contractor; the terms and conditions (including the supplementary, and any special and/or other conditions, the specifications, drawings and any addenda).

The remaining capitalized terms are not defined within the Subcontract.

[8] ECF No. 29-2, 6. Project is defined as: "Bozeman West Apartments, 2235 Tschache Lane, Bozeman, MT 59718." ECF No. 29-2, 1.

[9] ECF Nos. 27, 2; 29, 3; 32, 7; 34, 2.

[10] ECF Nos. 27, 2; 27-1, 11; 34, 2–3.

[11] ECF Nos. 27, 2; 27-1, 11; 34, 2–3.

[12] ECF Nos. 27, 2; 27-1, 11; 34, 2–3.

[13] ECF Nos. 27, 2; 27-2; 34, 3.

withdrew shortly after entry of the District Court judgment.[14] Neither Excavation nor McCoy retained new counsel nor participated in the arbitration in any substantive way following the withdrawal.[15]

On May 22, 2023, Petra submitted a brief with supporting documents to the Arbitrator.[16] Neither Excavation nor McCoy responded or otherwise opposed the relief requested.[17] The Arbitrator issued a "Final Award of Arbitrator" in August 2023.[18] The total Arbitration Award was $511,302.47.[19]

### B. Efforts to Confirm the Arbitration Award

After the Arbitration Award was entered, Petra filed a Petition to Confirm Arbitration Award ("Petition") with the Montana Eighteenth Judicial District Court ("Montana Court").[20] In its Petition, Petra explained, "a party may file an application with a district court to confirm the arbitration award . . . . [t]he district court shall confirm an award unless the opposing party files a motion to vacate, modify, or correct the arbitration award."[21]

The Petition was accompanied by a certificate of service which represented that a copy of was served upon Excavation and McCoy in the manner provided by MCA § 27-5-321.[22] According to that statute:

> Except as otherwise provided, an application to the court under this chapter must be by motion and must be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions. Unless the parties have agreed otherwise, notice of an initial application for an order must be served in the manner provided by law for the service of a summons in an action.

MCA § 27-5-321. The Certificate of Service was dated September 19, 2023.

---

[14] ECF Nos. 27, 2; 34, 3.

[15] ECF Nos. 27, 2; 34, 3.

[16] ECF Nos. 29, 5; 29-17; 32, 8.

[17] ECF Nos. 27, 3; 34, 5.

[18] ECF Nos. 27, 3; 29, 5; 32, 8; 34, 5; 29-16.

[19] ECF No. 29-16 ("Arbitration Award").

[20] ECF Nos. 17-1; 27, 3; 34, 5.

[21] Mont. Code Ann. § 27-5-311 (2025). ECF No. 17-1.

[22] ECF No. 17-1, 4.

4

Despite the representations in the Certificate of Service, Petra's agent—Williams Investigations—only began attempting to serve Excavation and McCoy at his prior residence and place of business on September 20, 2023.[23] Williams Investigations continued to make a series of unsuccessful attempts at service until October 8, 2023.[24] Petra never personally served Excavation or McCoy.[25] On October 16, 2023, Williams Investigations informed Petra that its attempts at service had failed.[26] Petra sent certified mail to Excavation's P.O. Box but they were marked return to sender and no acknowledgement was received.[27]

Strangely, despite recognizing service of the Petition was required and knowing that as of October 16, 2023, it had not occurred, Petra provided the Montana Court with a proposed order confirming its Arbitration Award on November 22, 2023.[28] A week later, the Montana Court entered an order confirming the Arbitration Award, and entered judgment confirming the Arbitration Award, against Excavation and McCoy.[29]

## IV. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The court must view the evidence in the light most favorable to the nonmoving party and determine whether such evidence would create a genuine dispute of material fact. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021). "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N.A., Inc.*, 911 F.3d 989, 992 (2018).

When a court is reviewing cross-motions for summary judgment, "each motion must be considered on its own merits." *Fair Housing Council of Riverside Cnty. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 449 (Feb. 1992)). The court must consider the evidence submitted in support of each motion separately. *Fair Housing Council*, 249 F.3d at 1136. The court has an independent duty to review the facts even when both parties

---

[23] ECF No. 27-6.

[24] ECF No. 27-6.

[25] ECF No. 27-6.

[26] ECF No. 27-6.

[27] ECF Nos. 27, 4; 34, 7.

[28] ECF No. 27-7.

[29] ECF Nos. 27, 4–5; 34, 7.

assert that there are no genuine issues. *Id.* In this case, both McCoy's Motion and Petra's Motion rely on an overlapping set of facts that are not disputed. However, the parties ask this Court to draw very different conclusions when analyzing those facts.

Petra's Motion seeks recognition of the judgment confirming the Arbitration Award and its preclusive effect on these proceedings. It argues that collateral estoppel or issue preclusion bar relitigation of the issues that are the subject of the Arbitration Award and judgment confirming it. According to Petra, application of collateral estoppel in this case entitles it to summary judgment on all of its causes of action and excepts its claims from McCoy's discharge. Integral to its argument is the validity and enforceability of the judgment confirming the award.[30]

McCoy's Motion asks this Court to find that the judgment confirming the award is void and that the Arbitration Award is not entitled to preclusive effect. McCoy first argues that the judgment was obtained through fraud, misrepresentation, and a failure to disclose to the Montana Court that service of the Petition did not comply with Montana law. As a result, the Montana Court lacked personal jurisdiction over him. Alternatively, he argues that the arbitration was not litigated and tantamount to a default proceeding, making collateral estoppel inapplicable. [31]

To determine the preclusive effect of the judgment and the Arbitration Award, this Court must first determine whether the judgment is void and, if so, whether the Arbitration Award carries the same preclusive effect that the judgment otherwise would. Petra argues that even if the judgment is void, the unconfirmed Arbitration Award is still entitled to preclusive treatment like a judgment. Accordingly, this Court will begin its analysis with McCoy's Motion. Since McCoy asks this Court to void a state court judgment, this Court would be remiss not to consider the limitations imposed on it by the *Rooker-Feldman* doctrine and 28 U.S.C. § 1257(a), before assessing whether McCoy is entitled to relief under Fed. R. Bankr. P. 7056. Next, it will consider Petra's Motion.

### B. McCoy is Entitled to Summary Judgment because the Judgment is Void

#### 1. *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine, "inferior" courts are barred from hearing de facto appeals from state court judgments. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983). A federal court is barred from hearing a claim under the *Rooker-Feldman* doctrine if it was actually litigated in state court prior to filing the federal action or the federal claim is inextricably intertwined with the state adjudication. *Knapper v. Bankers Trust Co.*, 407 F.3d 573, 580 (3d Cir. 2005). Here, there was no litigation before the Montana Court. Accordingly, this Court must determine if the claims in this adversary proceeding are inextricably intertwined with the Montana Court judgment.

---

[30] ECF No. 30.

[31] ECF No. 26.

The Court of Appeals for the Third Circuit has given the clearest articulation of the standard to apply when considering inextricability:

> A federal claim is inextricably intertwined with an issue adjudicated by a state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment. In other words, *Rooker–Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders.

*Id.* at 581 (cleaned up) (quoting *Walker v. Horn*, 385 F.3d 321, 329 (3d Cir. 2004)).[32] To begin, this Court notes that the typical circumstances of *Rooker-Feldman* are not present here. While the doctrine is structured to prevent losing parties from initiating complaints in federal court as plaintiffs, here we have a debtor asserting that a judgment a creditor seeks to except from discharge is void. If successful, Petra will have to establish both liability for its claims and that the liability is excepted from discharge.

Under Ninth Circuit precedent, a bankruptcy court cannot substitute a state court's determination of nondischargeability for its own. *See M.O. v. Rosario (In re Del Rosario)*, 668 B.R. 618, 630 (BAP 2025). Consideration of *Rooker-Feldman* here to ensure this action will not prevent the Montana Court from enforcing its own orders is idiosyncratic because—ultimately— a debtor's discharge under 11 U.S.C. § 524(a)(1), which "voids any judgment," will do precisely that.[33] By necessity, this Court must determine whether Petra's judgment confirming the Arbitration Award establishes liability and, if so, if the liability is subject to exception from

---

[32] The Ninth Circuit Court of Appeals has noted that bankruptcy stands, "[i]n apparent contradiction to the *Rooker-Feldman* theory . . . ." *Gruntz v. Cnty of L.A. (In re Gruntz)*, 202 F.3d 1074, 1079 (9th Cir. 2000). While *Rooker-Feldman* may still apply to bankruptcy, it's rationale is weaker, and its circumstances are more strained in a bankruptcy context.

[33] Petra and its counsel may have independent obligations under the applicable rules of professional responsibility to report to the Montana Court the affirmative misrepresentations that were made in connection with service and submission of the proposed order. The duty of candor includes:

- Not making a false statement of fact to a tribunal.
- If a lawyer makes a statement about a fact to the tribunal and he later learns that his statement was both false and material to the proceeding, the lawyer must correct the false statement of fact.

*See* Ronald D. Rotunda and John S. Dzienkowski, *Legal Ethics, Law. Deskbk. on Prof. Resp.* § 3.3-3 (2024-2025 ed.)

McCoy's discharge. This inquiry is independent of any action taken by the parties before the Montana Court.

Additionally, the Ninth Circuit Court of Appeals has clarified, "our caselaw has further narrowed the doctrine as applying only to suits alleging errors by the state courts in rendering judgment, as opposed to misconduct by litigants in obtaining such a judgment." *Miroth v. Cnty. of Trinity*, 136 F.4th 1141, 1152 (9th Cir. 2025) (quoting *Cogan v. Tabucco*, 114 F.4th 1054, 1064 (9th Cir. 2024)). McCoy has argued that the Montana Court judgment should be declared void because Petra failed to serve him as required by statute and then falsely represented to the Montana Court that he had been properly served. This Court finds that such relief would be within the exception outlined by *Miroth* and *Cogan* because it would be based on the misconduct of the litigant who obtained the judgment, not the Montana Court.[34]

The issues in this case do not ultimately seek relief from the Montana Court judgment. Instead, what is sought is a determination whether the Montana Court judgment or underlying Arbitration Award are excepted from discharge. The allegations are not that the Montana Court erred, but that the party obtaining the judgment engaged in misconduct. Therefore, this Court may determine whether Petra's judgment confirming the Arbitration Award is void without running afoul of *Rooker-Feldman*.

**2. The Montana Court judgment confirming the Arbitration Award is void**

Pursuant to the Uniform Arbitration Act, as adopted in Montana ("Montana Act"), a written agreement to arbitrate is enforceable, subject to a combination of general and specific exceptions. First, arbitration agreements are subject to challenge to the extent there are grounds at law or equity for the revocation of a contract. MCA § 27-5-114(1). Second, there are statutory exceptions that limit the applicability of arbitration agreements to specific circumstances. MCA § 27-5-114(2).

Assuming a valid and enforceable agreement to arbitrate exists, an arbitrator's award to a prevailing party may be enforced. In most instances, enforcement of an arbitrator's award will require confirmation of the award by a court with jurisdiction and entry of a judgment confirming the award. MCA § 27-5-314. Under the Montana Act, "[u]pon the application of a party, the district court shall confirm an award unless within the time limits imposed in this chapter grounds are urged for vacating, modifying, or correcting the award . . . ." MCA § 27-5-311.

An application for confirmation of an award must be made "by motion and must be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions." MCA § 27-5-321. Critical to McCoy's counterclaims and summary judgment, "[u]nless the parties have agreed otherwise, notice of an initial application for an order must be

---

[34] While the issue is not before this Court, it is difficult to conclude that Petra did not commit fraud upon the Montana Court when it represented that McCoy had been properly served after it had been notified that service failed five times and had mail returned. Despite this, Petra submitted a proposed order.

served in the manner provided by law for the service of a summons in an action." *Id.* The undisputed facts demonstrate Petra failed to serve McCoy in the manner required, and McCoy and Petra had no agreement otherwise.

### a. McCoy was not properly served under MCA § 27-5-321

To be preclusive, a final judgment must be a valid judgment, and a judgment cannot be valid if the court did not acquire jurisdiction over the defendant. *Mountain W. Bank, N.A. v. Glacier Kitchens, Inc.*, 281 P.3d 600, 602–03 (Mont. 2012). "The nature of service is twofold: it serves notice to a party that litigation is pending, and it vests a court with jurisdiction." *Fonk v. Ulsher*, 860 P.2d 145, 147 (Mont. 1993). The Montana Supreme Court has explained, "even where a defendant has actual notice of the summons and complaint[,] knowledge of the action is not a substitute for valid service." *Mountain W. Bank*, 281 P.3d at 603 (internal quotations omitted) (quoting *Fonk*, 860 P.2d at 147).

Absent proper service, a court's jurisdiction over a party does not exist. *Reservation Operations Center LLC v. Scottsdale Ins. Co.*, 419 P.3d 121, 127 (Mont. 2018) (citing *Blaskovich v. Blaskovich*, 815 P.2d 581, 582 (Mont. 1991)). The only way for service to be proper upon an individual is by either "delivering a copy of the summons and complaint to the individual personally; or delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive such service of process." Mont. R. Civ. P. 4(e). M. R. Civ. P. 4(e) directs that individuals "must" be served in this manner.

The Montana Supreme Court has construed "must" as "'mandatory, rather than permissive'" *Dodds v. Tierney*, 544 P.3d 857, 864 (Mont. 2024) (quoting *Montco v. Simonich*, 947 P.2d 1047, 1051 (1997)). While service may be completed by first-class mail, if an acknowledgement is not received within 21 days, then service must be made in person. M. R. Civ. P. 4(d)(3)(B), (C). When the defendant has not been properly served, the judgment is void *ab initio* because the court never acquired the requisite jurisdiction. *Mountain W. Bank*, 281 P.3d at 603.

Further, a judgment that is void due to improper service is subject to collateral attack at any time in any proceeding. *Kahle v. Smithers*, 733 P.2d 844, 846 (Mont. 1987) (quoting *Russel Realty Co. v. Kenneally*, 605 P.2d 1107 (1980)). Petra concedes that McCoy was not properly served under MCA § 27-5-321. Instead, Petra argues that McCoy waived strict compliance with MCA § 27-5-321 and M. R. Civ. P. 4(e) and agreed to service of process by certified mail because the Subcontract integrated the rules of the American Arbitration Association ("AAA").[35] Based on this argument, Petra argues McCoy is not entitled to judgment as a matter of law. Neither the undisputed facts nor law support this contention.

---

[35] Petra's agents attempted multiple times to serve McCoy and reported their unsuccessful attempts to Petra. Petra attempted to serve McCoy by certified mail, but did not receive an acknowledgement. Accordingly, service was not accomplished under the mandatory requirements of M. R. Civ. P. 4(e).

### b. McCoy did not agree to waive personal service under M. R. Civ. P. 4(e).

To avoid entry of summary judgment for McCoy, Petra argues that the Montana Court acquired jurisdiction over the Idaho arbitration, despite the absence of personal service, because McCoy consented to service by mail when he signed the Subcontract as a guarantor.[36] This argument rests on two premises. First, it assumes a valid arbitration agreement exists between Petra and McCoy in his individual capacity. Contrary to Petra's arguments, the record is devoid of any arbitration agreement signed by McCoy individually.[37] Setting aside this glaring hole in the record, the Court will consider Petra's premise that McCoy was a party to the Subcontract for purposes of summary judgment and address Petra's waiver argument.

Petra's waiver argument rests on its combined reading of its Subcontract and the AAA rules. Petra contends without citation to the record, "[t]he Subcontract expressly specified that the AAA Construction Industry Rules would govern any arbitration between the parties."[38] It asks this Court to construe the Subcontract in conjunction with the AAA rules. In essence, it contends the AAA rules are incorporated into its Subcontract and form the basis of McCoy's waiver of strict compliance with MCA § 27-5-321 and M. R. Civ. P. 4(e).

Incorporation of the AAA rules into the Subcontract as Petra urges produces multiple instances of equally plausible interpretations. The Subcontract's choice-of-law provision requires it to be interpreted under the laws of the state of the project, i.e. Montana.[39] The existence of equally plausible but different interpretations results in ambiguity. *Hill v. Ellinghouse*, 553 P.3d 365, 372 (Mont. 2024). Ambiguities are construed against the drafter. *AWIN Real Estate, LLC v. Whitehead Homes, Inc.*, 472 P.3d 165, 223 (Mont. 2020) (citing *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops. Inc.*, 164 P.3d 851, 860 (Mont. 2007) and *Ophus v. Fitz*, 11 P.3d 1192, 1197 (Mont. 2000)). Consideration of the specific ambiguities undermines Petra's waiver argument.

---

[36] ECF No. 36, 2. The Subcontract contains a clause at ¶ 24.5 which states, "Subcontractor's company owner(s), officer(s), director(s), and the individual executing this Subcontract (hereinafter referred to as 'Guarantor') hereby personally guarantee to Contractor any and all obligations of the Subcontractor of every kind and character, irrespective of the amount of said obligations." ECF No. 29-2, 22.

[37] This Court makes no findings whether the guarantor provision subjects McCoy individually to the arbitration provision because the jurisdictional requirement is decisive. Given the early stage of proceedings, this Court limits its findings to the narrowest grounds for decision but does note that this construction of the Subcontract is not a natural reading in the absence of additional evidence.

[38] ECF No. 33, 3.

[39] ECF No. 29-2, 6.

The only reference to the rules in the Subcontract states that "arbitration proceedings will be administered . . . with arbitrators appointed from the Construction Industry Panel under the Construction Industry Rules."[40] This phrase could be read in at least two different ways. First, it could be construed narrowly as the Construction Industry Rules will be utilized in connection with the appointment of arbitrators. Alternatively, it could be construed as the arbitration proceedings will be administered . . . under the Construction Industry Rules. The Court will adopt the later—despite the ambiguity—to further illustrate the deficiencies with Petra's position.

Assuming *arguendo* that the AAA rules are incorporated into the Subcontract under the later construction, Petra relies on Rule 44(a) which states:

> Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules; for any court action in connection therewith; or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard thereto has been granted to the party.[41]

According to Petra, Rule 44(a) permitted service of the Petition by mail in Montana. Petra's consideration of Rule 44(a) in a vacuum cannot be reconciled with its own Subcontract, which limits the reach of Rule 44(a).

If this Court incorporates Rule 44(a) into the Subcontract, it must apply the rule according to its plain language. *Wurl v. Polson School Dist. No. 23*, 127 P.3d 436, 442 (Mont. 2006).[42] Pursuant to the Subcontract, any litigation must be in Ada County, Idaho.[43] This contractual provision modifies the phrase "any court action" in Rule 44(a). Harmonizing the Subcontract and Rule 44(a) results in Rule 44(a) being limited to court actions or entry of judgment in Ada County, Idaho.[44] It does not apply to Gallatin County, Montana. Absent such an

---

[40] ECF No. 29-2, 21.

[41] ECF No. 30-2,

[42] This Court notes that the Montana Supreme Court requires that the incorporation be clear. *Wurl*, 127 P.3d at 442. As noted, the incorporation of the AAA rules and the scope of such incorporation is ambiguous but, for the sake of addressing the strongest version of Petra's argument, this Court is entertaining the argument that the rules are fully and unambiguously integrated into this provision.

[43] ECF No. 29-2, 21.

[44] ECF No. 29-2, 21.

interpretation, the specific language of the parties' agreement is rendered meaningless by the general language of Rule 44(a). While the Court's analysis could stop here, Petra's initial impulse and efforts to serve McCoy personally are telling.

When a provision in a contract is ambiguous, the parties' course of performance is very informing, "if not controlling." *Ophus*, 11 P.3d at 1196. If Petra's Subcontract constituted a waiver of strict compliance with MCA § 27-5-321 and M. R. Civ. P. 4(e), as allowed by MCA § 27-5-312, its Petition would have explained as much, and service would have been accomplished by mail consistent with the Subcontract. Instead, it is evident Petra then understood (as McCoy asserts now) that the Subcontract was not a waiver, and service that complied with MCA § 27-5-321 and M. R. Civ. P. 4(e) was required. Petra's present interpretation of its Subcontract, an interpretation wholly inconsistent with its retention of Williams Investigations and its own efforts to serve McCoy personally, rings hollow.

Finally, even if this Court further indulged Petra's argument that the Subcontract constituted a waiver of strict compliance with MCA § 27-5-321 and M. R. Civ. P. 4(e) to be effective, the waiver must be made deliberately and understandingly. Under Montana law a defendant may waive issuance or service of a summons. *See Haggerty v. Sherburne Mercantile Co.*, 186 P.2d 884 (Mont. 1947) (allowing waiver of service as a personal right); *MacPheat v. Schauf*, 969 P.2d 265, 290–91 (Mont. 1998) (Stating that *Haggerty* "recogniz[ed] the rule" that general appearance is a waiver of issuance or service of a summons). However, such waivers must be "deliberately and understandingly made" *Milanovich v. Schnibben*, 160 P.3d 562, 564–65 (Mont. 2007) (quoting *May v. Figgins*, 607 P.2d 1132, 1138–39 (Mont. 1980)). The undisputed facts show there was no deliberate and understanding waiver by McCoy of strict compliance with MCA § 27-5-321 and M. R. Civ. P. 4(e).[45]

McCoy is entitled to summary judgment because the undisputed facts show Petra's efforts to confirm the Arbitration Award were ineffective because Petra failed to strictly comply with MCA § 27-5-321 and M. R. Civ. P. 4(e) and McCoy did not waive his right to be personally served in the manner prescribed by MCA § 27-5-321.[46] Personal service was defective. As a result, the Montana Court never obtained personal jurisdiction over McCoy. Additionally, Petra materially misrepresented that service had been achieved in order to obtain the judgment

---

[45] Neither McCoy nor Excavation could have anticipated anything more than the recognition of a foreign judgment proceeding in Montana pursuant to Montana's Uniform Enforcement of Foreign Judgments Act (MCA §§ 25-9-501–508), because the Subcontract was unambiguous when it stated, "Any litigation proceedings shall be in Ada County Court, Idaho." ECF No. 29-2, 21. It is clear that no party could "deliberately and knowingly" waive their right to service in Montana when the parties' express agreement selected Idaho as the forum for all litigation.

[46] This Court does not need to decide the issue of whether McCoy was a party to the agreement. That issue is disputed by the parties and not ripe for summary judgment. It is also not necessary for the disposition of this matter because the Subcontract does not constitute a waiver.

confirming the Arbitration Award. McCoy is entitled to summary judgment on Counts I and II of his counterclaim.

### C. Petra is not Entitled to Judgment as a Matter of Law because the Judgment Confirming it is Void and the Unconfirmed Arbitration Award is not Entitled to Preclusive Effect.

Independent of McCoy's Motion, Petra also requested summary judgment arguing that under collateral estoppel principles, its judgment and the Arbitration Award are entitled to preclusive effect. If Petra is correct, relitigation of issues adjudicated by the arbitrator should be barred. Although this Court has already determined McCoy is entitled to summary judgement, it must undertake an independent review of Petra's Motion and consider it on its own merits. *Fair Housing Council*, 249 F.3d at 1136.

The material facts surrounding contract formation between Petra and Excavation, the arbitration, Arbitration Award, and efforts to confirm the Arbitration Award are not disputed.[47] Based on those facts, McCoy argued the judgment was void. Based on the same facts, Petra argues the judgment is entitled to preclusive effect or, alternatively, that even if the judgment is void, this Court should construe the Arbitration Award as if it was a judgment for purposes of issue preclusion and summary judgment. This Court cannot conclude that the judgment is void for purposes of McCoy's Motion and resurrect it for Petra's Motion. As explained above, the judgment is void; and there are additional reasons for concluding Petra is not entitled to judgment as matter of law.

"[T]he preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued." *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) (citing *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 57 F.3d 798, 800 (9th Cir. 1995)). In Montana, issue preclusion is applied after weighing four factors:

1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?

2. Was there a final judgment on the merits in the prior adjudication?

3. Was the party against whom preclusion is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom preclusion is asserted afforded a full and fair opportunity to litigate the issue that may be barred?

---

[47] Petra contends it has a valid arbitration agreement with McCoy, but such an agreement is not in the record. Despite that, for purposes of the McCoy's Motion, the Court assumed there was one and McCoy was still entitled to judgment as a matter of law. Here, when considering Petra's Motion, the Court will make a similar assumption for purposes of the immediate analysis.

13

*Shelton v. Dep't of Public Health and Human Servs.*, 567 P.3d 285, 293 (Mont. 2025) (quoting *Beck v. Dimar*, 554 P.3d 130, 136 (Mont. 2024)). Petra posits that its Arbitration Award was confirmed and the judgment by the Montana Court confirming the Arbitration Award is entitled to preclusive effect. Alternatively, if this Court finds its efforts to confirm the Arbitration Award were ineffective and its judgment void, it requests this Court to give preclusive effect to the unconfirmed Arbitration Award.

Petra is not entitled to judgment as a matter of law because there was no final judgment on the merits in the arbitration proceeding and an unconfirmed Arbitration Award is not synonymous with a judgment. Under Ninth Circuit precedent,

> The doctrine of issue preclusion applies in dischargeability proceedings . . . . The party asserting the doctrine has the burden of proving that all of the threshold requirements have been met. To meet this burden, the moving party must have pinpointed the exact issues litigated in the prior action and introduced a record revealing the controlling facts. Reasonable doubts about what was decided in the prior action should be resolved against the party seeking to assert preclusion.

*Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 382 (BAP 9th Cir. 2011) (citations omitted). Petra cannot establish that a final judgment exists for purposes of issue preclusion.[48]

### 1. Petra has not met its burden to show a final judgment exists

Much of the Court's analysis here mirrors its analysis above, but there remain additional points that merit emphasis. Petra correctly notes that a "confirmed arbitration award is a final judgment with preclusive effect." *Galilea, LLC v. Pantaenius Am. Ltd.*, 2021 WL 2250862, at *6 (D. Mont. Apr. 14, 2021), report and recommendation adopted, 2021 WL 2206968 (D. Mont. June 1, 2021). Unlike *Galilea*, this case does not involve the FAA. Instead, it requires application of the Montana Act. Scrutiny of the Montana Act further demonstrates Petra has ignored controlling statutes and principles in its effort to obtain a judgment confirming the Arbitration Award.

Under the Montana Act, the jurisdiction of the Montana Court to confirm an arbitration award is conditioned on an agreement that provides for arbitration in Montana. MCA § 27-5-322. It is undisputed that the Subcontract required arbitration in Idaho. This distinction renders cases like *Galilea* that rely on the FAA inapplicable. Instead, this case is more analogous to cases like *Berkeley Research Grp., LLC v. S. Adv. Materials, LLC*, 2026 WL 181929, at *4 (Tenn. Jan 23, 2026). In *Berkeley*, a Tennessee court was asked to confirm an arbitration award that resulted

---

[48] Even if this Court were to find that the Arbitration Award was a final judgment, the Court harbors doubts about the sufficiency of the Arbitration Award when the record shows it was purportedly entered against a party that did not agree to arbitrate and was ultimately resolved in a manner analogous to taking a default.

from an arbitration clause providing for arbitration in Pennsylvania. The Tennessee court concluded it lacked subject matter jurisdiction to do so.

The Supreme Court of Tennessee concluded that an agreement to arbitrate in Tennessee was necessary to confer jurisdiction on its courts "to enter judgment on an award thereunder."[49] *Id.* at *3. In its decision, it concluded that in order for Tennessee to have subject matter jurisdiction, the agreement must provide for arbitration in Tennessee. It recognized that where the parties designate the place for arbitration, that state has exclusive jurisdiction to determine the validity of an arbitrator's award. *Id.* at *4.

The *Berkeley* Court's interpretation of its statute and its jurisdictional limitations follows other state court decisions that have considered the question and echoes comments to the most recent version of the Uniform Arbitration Act. According to the comments:

> Section 26(b) follows the almost unanimous holdings of courts under the present, same language of Section 17 of the UAA that if the parties in their agreement designate a place for the arbitration proceeding, then that State has exclusive jurisdiction to determine the validity of an arbitrator's award in accordance with Section 25. The rationale of these courts has been to prevent forum-shopping in confirmation proceedings and to allow party autonomy in the choice of the location of the arbitration and its subsequent confirmation proceeding.

Unif. Arb. Act § 26 cmt. 3 (Unif. L. Comm'n 2000). Both Idaho and Montana have adopted the previous version of this provision into their own statutes. *See* Idaho Code § 7-917 and MCA § 27-5-322.

Like the statute in *Berkeley*, the applicable Montana statute explicitly states, "an agreement providing for arbitration in this state confers jurisdiction on the district court to enforce the agreement under this chapter and to enter judgment on an award under the agreement." MCA § 27-5-322. The facts here are indistinguishable from *Berkeley*, and the cases discussed therein. Petra entered an agreement to arbitrate in Idaho. Arbitration was completed in Idaho. It later requested confirmation of the Arbitration Award in Montana. It never sought to confirm the award in Idaho despite the contractual provision requiring, "[a]ny litigation proceedings shall be in Ada County Court, Idaho."[50]

---

[49] The specific statutory language in Tennessee Code Annotated was similar to MCA § 27-5-322, and stated:

> The making of an agreement described in this section providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this part and to enter judgment on an award thereunder.

Tenn. Code Ann. § 29-5-302 (2012).

[50] ECF No. 29-2, 21.

15

Like the *Berkeley* Court, this Court similarly concludes that if Petra wanted to confirm the Arbitration Award, the forum selection clause in its Subcontract required it to do so before the Ada County Court in Idaho. The parties agreed that the Ada County Court would have subject matter jurisdiction. The Montana Court lacked subject matter jurisdiction to confirm the Arbitration Award.[51]

While ordinarily lack of subject matter jurisdiction does not divest a judgment of its preclusive effect, Petra's failure to properly serve McCoy deprived him of the opportunity to contest the Montana Court's subject matter jurisdiction. *See Des Moines N. & R. Co v. Iowa Homestead Co.*, 123 U.S. 552, 557 (1887) (finding that lack of subject matter jurisdiction did not preclude issue preclusion). Petra requests its judgment be given preclusive effect, but the judgment was a nullity and void because it was not properly served and was entered without personal jurisdiction over McCoy. *See Kalb v. Feuerstein*, 308 U.S. 433, 439 (1940) (finding that bankruptcy law is Congressionally granted and divests state court jurisdiction of the power to enforce judgment subject to attack as a nullity); *See generally Jackson v. FIE Corp.*, 302 F.3d 515 (5th Cir. 2002) (finding that a lack of personal jurisdiction by service invalidates any findings). As a void judgment, it is not entitled to preclusive effect, and Petra is not entitled to summary judgment.

### 2. An unconfirmed arbitration award is not entitled to preclusive effect under claim preclusion principles

An unconfirmed arbitration award is not synonymous with a final judgment, and a final judgment is required for issue preclusion to apply. *HomeRiver Grp. v. Anders Bus. Solutions, LLC*, 202 WL 1938206, at *3 n.2 (Mont. July 15, 2025) (citing *Baltrusch v. Baltrusch*, 130 P.3d 1267,1274 (Mont. 2006)). Once an arbitrator makes an award, the parties must make an application to the court to confirm the award. MCA §§ 27-5-321; 27-5-311. Once the court enters an order confirming the award, only then is judgment entered and enforced "as any other judgment." MCA § 27-5-314. The Montana Act parallels the FAA, where the award does not take on the effect of a judgment until it has been docketed and then "so entered shall have the same force and effect . . . as . . . a judgment in an action." 9 U.S.C. § 13.

Enforcing arbitration awards without requiring confirmation by a court with subject matter or personal jurisdiction over a party would render specific statutory provisions in the Montana Act utterly meaningless and make the distinctions between the terms "award," "order," and "judgment" superfluous.[52] Other state courts have reached similar conclusions when tasked with interpreting applicable arbitration statutes.

---

[51] If Petra had confirmed the Arbitration Award in Idaho, it could have subsequently sought recognition of an Idaho judgment in Montana pursuant to the Uniform Enforcement of Foreign Judgments Act.

[52] *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 51 (2025); *Marx v. General Revenue Corp.*, 568 U.S. 371, 372 (2013) ("the canon is strongest when an interpretation would render superfluous

16

In *Larson v. Farmers Ins. Co.,* a Washington court of appeals concluded that "an arbitration award, without more, is not a final judgment." 909 P.2d 935, 938 (Ct. App. Wash. 1996). The Louisiana Supreme Court has also recognized, "if the legislature intended unconfirmed awards to have preclusive effects, there would be no reason to include a procedure for confirming awards." *In re Interdiction of Wright*, 75 So.3d 893, 897 (La. 2011). [53]

Petra has cited cases to the contrary, including *Ives v. Lyon (In re Ives)*, 2020 WL 1456479 (Bankr. D. Or. Mar. 20, 2020). In that case, the Oregon bankruptcy court made no distinction between an unconfirmed arbitrator's award and a judgment. Without significant analysis, the court treated the unconfirmed award as a judgment for issue preclusion purposes. Some California courts have adopted similarly strained rationales. *See Thibodeau v. Crum*, 4 Cal. App. 4th 749, 758–60 (Cal. Ct. App. 1992) (compiling cases).[54] Variations in state law may explain these different outcomes. Despite these differences, this Court remains unpersuaded it should wholly disregard the process that the Montana legislature endorsed when it passed MCA §§ 27-5-314 and 27-5-322.[55]

---

another part of the same statutory scheme"); *Mont. Trout Unlimited v. Mont. Dep't of Natural Resources and Conservation*, 133 P.3d 224, 228 (Mont. 2006) ("We must endeavor to avoid a statutory construction that renders any section of the statute superfluous or fails to give effect to all of the words used.") (citing *Mattson v. Mont. Power Co.*, 48 P.3d 34, 36 (2002)).

[53] *U.S. v. Castleman*, 572 U.S. 157, 178 (2014) (Scalia, J., Concurring) ("Congress presumably does not enact useless laws."); MCA § 1-2-101 ("Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."); *Am. Linen Supply Co. v. Dep't of Rev.*, 617 P.2d 131, 133 (Mont. 1980) ("The legislature does not perform useless acts. An interpretation that gives effect is always preferred over an interpretation that makes the statute void or treats the statute as mere surplusage.") (citation omitted).

[54] As noted by the BAP and the *Thibodeau* Court, California law treats an unconfirmed arbitration award as a contract. *Id.*; *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 828 n.10 (BAP 9th Cir. 2006). Even so, issue preclusion may apply so long as the award is "sufficiently firm" regarding adjudicated matters to satisfy California's more relaxed finality requirements of issue preclusion. *Khaligh*, 338 B.R. at 828 n.10. Even under relaxed standards, the Court must satisfy itself that the arbitration sufficiently resembled an adjudicatory procedure for issue preclusion to apply. *Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1178 (9th Cir. 2002). California's laws are not Montana's, but even if they were, this Court finds that Petra has not presented sufficient evidence to convince this Court that the arbitration met the standard for issue preclusion by those courts. *See infra* n. 57

[55] Even were this Court persuaded that an unconfirmed arbitration award carried preclusive effect, Petra would need to demonstrate the arbitration had jurisdiction over its claims. *Wolff v. Tomahawk Manuf.*, 689 F.Supp.3d 923, 942 (D. Or. 2023) (citing *Wolf v. Gruntal & Co., Inc.*, 45 F.3d 524, 529 (1st Cir. 1995)).

17

If an unconfirmed arbitration award were as binding and preclusive as any judgment, compliance with a detailed statutory process that requires jurisdiction, petition, service, review, entry of an order, docketing of a judgment, and an appeals process would serve no purpose. MCA §§ 27-5-311–24. While this Court applauds practicality, imbuing arbitration awards with the same status as final judgments would bypass the statutory scheme enacted by the Montana legislature. This Court finds that the unconfirmed Arbitration Award is not a final judgment.[56] A final judgment is an essential element of issue preclusion under applicable Montana law. Absent a final judgment, Petra is not entitled to summary judgment. Petra's Motion must be denied.[57]

## V.      Conclusion

For reasons that are not clear to this Court, Petra abandoned the forum selection clause in its Subcontract following completion of the arbitration in Idaho and endeavored to have the Arbitration Award confirmed in Montana without establishing personal jurisdiction over McCoy by a court that lacked subject matter jurisdiction. These mistakes will require Petra to litigate both liability and dischargeability before this Court because the Montana Court judgment is void *ab initio,* and the unconfirmed Arbitration Award is not preclusive. An Order will be entered separately.

Dated March 24, 2026.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

---

[56] This Court similarly found that McCoy's cases cited for against the preclusive effect of arbitration awards were inapposite. Many of the cases cited were limited to issues of 28 U.S.C. § 1738 rather than common law issues of issue and claim preclusion, particularly under state law.

[57] Given the Court's analysis of the other issues, it has not devoted significant attention to the issue of whether the arbitration was little more than a default proceeding, but the arbitrator's findings were, at the very least, based on a one-sided presentation of evidence by Petra. ECF Nos. 27, 3; 29-16; 29-17; 34, 5.